## Tharp and Burke *vs* Cotton's Ex'rs., &c.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Bills of review. Consolidating suits. Decrees. Parties in Chancery.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THE first decree rendered in this case, and which was before this Court at the fall term, 1845, (6 *B. Monroe,* 6,) declared expressly that the two debts due from the administrators of Felts to Cotton's executors, had the first and prior lien upon the mortgaged property, (in both mortgages ;) that the debt to Tharp was next in precedence, and that to Burke last. This Court in its opinion then rendered, does not pronounce that disposition erroneous, but merely says, "The mortgage debts thus reduced, (that is by the credits directed,) have respective-

ly, the first lien on the property mortgaged. Tharp having filed his bill first will be entitled to precedence over Burke." This language though it implies affirmatively that each mortgage debt has the first lien upon the property on which it is secured, does not imply that either of them is in any event to be postponed to the debts of Tharp and Burke. Nor can it be assumed, that in directing the remnant of the Norton debt in the hands of Cotton's executors, to be applied first as a credit to the first mortgage debt, and then as a credit to the second, this Court intended to subject the executors to loss in case the second mortgage should prove insufficient to satisfy the debt secured by it. On the contrary, by directing the application of the Norton debt first to the payment of the note of $978, for which there was no security, it is clearly shown that the Court did not intend to take this disposable fund out of the hands of the executors, leaving any part of their just claims unsatisfied. The contingency of the insufficiency of the second mortgage to satisfy the debt therein secured, was not contemplated; and the direction as to the application of the Norton debt to the two mortgage debts in the order of seniority, was evidently made in view only, of the fitness of that mode, in the absence of every other circumstance which might control it. Whether upon principle, a mortgagee having two distinct mortgages, each securing a separate debt upon separate property, and having before any other creditor intervened, brought a separate suit for the foreclosure of each mortgage, would upon the consolidation of these suits with those of subsequent attaching creditors of the mortgagor, be entitled to a decree appropriating any excess which might arise in selling under one mortgage to make up the deficiency in the other before the attaching creditors would be entitled to any thing, need not be now considered. It was in effect so decided in the first decree. This principle of the decree does not appear to have been relied on in this Court as an error, and was certainly not made the ground of reversal. Neither was it so expressly disapproved or contradicted by the former opinion, that in remanding the cause for proceedings conformable to that opinion, the mandate

should necessarily be understood as requiring a departure from this principle, and especially with the effect of violating the recognized equity of Cotton's executors to apply the Norton debt to such of their own demands as were not secured. The first decree of the Chancellor had left certain rents received by the mortgagee from the mortgaged premises to be applied to the credit of the unsecured note of $978, and had allowed the executors of the mortgagee to retain the Norton debt as their own. And for these errors alone, the decree was reversed, and the cause remanded for further proceedings and decree in conformity with the opinion of this Court. Before the return of the cause to the Court below, the property had been sold under the first decree, which was not suspended; and on its appearing that the proceeds of the property in the second mortgage were insufficient to pay the debt secured by that mortgage, but that the proceeds of the property in the first mortgage added to the remnant of the Norton debt, produced an excess beyond the first mortgage debt more than sufficient to pay both debts, (which result would also be produced by applying the Norton debt first to make up the deficiency in the first mortgage, and then to make up the deficiency in the second mortgage,) the Chancellor decreed the satisfaction of both debts out of the aggregate fund, before applying any part of it to the claims of Tharp and Burke. The consequence of which is, that about one half of Tharp's claim is left unsatisfied, and Burke gets nothing, when by applying the Norton debt to the first mortgage debt only, and considering the excess arising from that mortgage thus relieved, as subject to the attachments before it could be applied in aid of the second mortgage, Tharp's debt would be fully satisfied, and a small sum paid on that of Burke; but Cotton's executors holding the two mortgages, and also the Norton debt, more than sufficient for the entire satisfaction of all their claims, would lose about one half of their second mortgage debt.

The decree as rendered, conforms to the equitable principle applicable to the case, and which was impliedly recognised in the former opinion, and as in effect it only carries out the precedency of the mortgage debts

as established by the first decree, which whether erroneous or not, as therein declared, was not expressly overruled nor particularly animadverted on by this Court, we cannot say that it so far violates either the mandate of this Court, or the principles of the opinion to which it refers, as to require or authorize a reversal on that ground.

The record presents also an attempt on the part of Burke to renew, after the return of the cause to the Court below, the contest for precedency with Tharp, in the appropriation of the fund remaining applicable to one or both of their claims. This was attempted by filing a bill of review, alledging first, that Tharp, on account of certain defects in his proceedings, had acquired no lien. Secondly, that under the act of 1839, regulating the administration of estates, (3 *Stat. Law*, 240,) the assets of Feltz should be distributed ratably among his general creditors. And third, that since the rendition of the first decree, and while the case was in this Court, the complainant had discovered that the demand of Tharp, (which he held as endorsee of a sight bill of exchange, accepted by Feltz, under date of New Orleans,) was founded wholly on a gaming consideration, and that he had not known until after the case was in this Court, either the fact itself or the means of proving it. This bill was answered by Tharp, who denied the alledged discovery, professed his own ignorance of the facts alledged as to the consideration of his demand, and claimed to be an innocent holder for value, &c. He also alledged that the administrator of Feltz had set up the same fact as to the gaming consideration, in answer to his, (Tharp's) bill, and taken proof, and that this question and the others made by the bill of review, was decided by the decree of the Chancellor and of this Court. He relied upon these decrees as a bar, and also demurred to the bill of review. Proof was taken by Tharp which leaves no doubt that the bill was accepted by Feltz, solely in consideration of money lost at gaming in the State of Ohio, and that by a statute of that State which was proved by copy though not referred to in the bill, the transaction was condemned as illegal, and all securities founded on it declared void. But on hearing, the Chan-

Tharp, &c.
vs
Cotton's Ex's.

cellor dismissed the bill of review and gave precedence to the claim of Tharp, as already stated.

That which is put in issue and decides by the original bill, cannot be the subject matter of a bill of review.

In deciding as was done by the first decree, and by the opinion and mandate of this Court, that Tharp had a lien for his claim prior to that of Burke, all of the questions presented by the bill of review were in effect decided first by the Chancellor and then by this Court. With regard to the two first questions, no new fact or evidence is brought forward or proposed by the bill of review. But it seeks a re-investigation of them and a different decision upon the same record on which they were formerly decided. But as between the parties to the decree and to the decision of this Court, its decision upon questions of law apparent in the record, and which either were or might have been made, must, in the same suit and as to the same matter, be final, and certainly unreversible by the inferior tribunal on a bill of review. With regard to the third question, as to the justice of Tharp's claim, we have no doubt that the parties to the decree are just as much bound by the decision of this Court upon that question as upon the others, and that it must be deemed equally conclusive in the same suit and upon the same matter. Unless a change be made in the record the decision in this Court, whether involving mere law, or mere fact, or both, must be carried out in giving final operation to the decree. But on this third question, the bill of review proposes to change the state of the record by introducing new evidence with respect to a matter before decided, that is with respect to the justice and validity of Tharp's claim. How far and upon what terms he can do this, or has shown a right to do it in this particular case, and how far he has succeeded if he has the right, are the material points arising in this part of the case?

Parties to decrees are bound by them until reversed; but may impeach them by a direct proceeding, on the ground of error, of law or of fact, or for fraud, by

If Burke was not a party to the decree and bound by it until reversed, his right would not be concluded by the disposition which it makes of the subject, nor by any decision of law or fact involved in it. Not being bound by it, he might, in the assertion of his own rights, disregard it or impeach it collaterally. If bound by it as a party, he can only impeach or change it by direct pro-

ceeding on the ground of error of law or of fact, or on
the ground of fraud. And this must be (by petition for
re-hearing if in time or,) by writ of error or appeal, or
by bill of review or bill in the nature of a bill of review.
In whatever mode he became a party, if bound by the
decree until reversed, he can only get rid of its effect by
reversal, and he can only reverse it by the same mode of
proceeding and on the same terms as applicable to him-
self, which the law has prescribed to all, for effecting the
same object.

Then as to his being a party to the decree and bound
by it, we apprehend it is too late now to make the ques-
tion. It is true he never was directly made a party to the
suit of Tharp, nor did he make Tharp a party to his suit,
but in March, 1843, these two suits and the two which
Cotton had brought upon his mortgages, having been pre-
viously submitted for hearing, an order was made that
the four cases be consolidated and heard together, on
which the order of hearing was set aside and the cases
remanded to the docket. In December, 1844, nearly
two years afterwards, the four causes were heard together
and a decree pronounced settling the rights of the par-
ties, by determining the sum due to each and declaring
the order of precedency between them, in the appropria-
tion of the subject for which all were contending. The
order of consolidation was made for the very purpose of
avoiding the confusion which might ensue from separate
decrees subjecting the same property to different claims,
without determining the rights of the claimants as be-
tween each other, as well as against the common debtor ;
it must be understood to have been made in order that
the Court might be enabled to make a joint decree, (or
a joint and several decree,) which ascertaining the rights
of each as affecting or affected by those of others, and
directing a disposition of the subject in accordance with
those rights, should be binding upon all. Such as we
think was the effect as well as the object of the order of
consolidation, and such was undoubtedly the character of
the decree. It was a decree between all the parties to
the consolidated suits, settling the rights of each, both
with regard to the sums due and the respective rights of

THARP, &c.
vs
COTTON's Ex's.

petition for a re-
hearing, writ of
error, appeal or
bill of review.

Where cases are
consolidated and
heard together,
the object of
which is satis-
faction out of a
common fund,
the object being
to settle the
claims of the res-
pective claim-
ants between
each other, as
well as their
claims against
the common
debtor or fund,
the decree is
binding upon all
the parties.

If in such case any party desire to contest the claim of another, he should have the opportunity to do so. He may do so by making such claimant a party to his bill.

the parties to have their claims thus adjusted and satisfied out of the fund in litigation. As the order of consolidation gives to the consolidated suits such a shape and effect as that a decree may be rendered which shall be binding upon all parties, it of course becomes the right and duty of each claimant to look into the record of the suits in which claims are set up that might affect his interest; and he may, upon the hearing, contest any such claim upon the record as it then stands, or he might, before the hearing, become a party to the particular suit, or make an unjust claimant a party to his own suit, and make such issues or proof as the case may admit of or require. He should, as a matter of justice, have an opportunity of exercising these rights, if the order of consolidation is forced upon him. The question of the amount and validity of the several claims set up in these proceedings *in rem*, is material only so far as the claim may reach the thing sought to be subjected, and in this view each claimant has the same right to contest the validity of the claim of another who is striving for precedency, as he has to question the sufficiency of the proceeding by which he attempts to gain it. And there can be no doubt that if a decree in consolidated suits such as was rendered in this case, should give precedence to a claim actually disproved or not sufficiently established in the particular suit in which it is set up, a postponed claimant might, though never made directly a party to that suit, reverse the decree on that ground, just as he might do if precedence were improperly given to a just claim.

We must presume that the parties to these consolidated suits understood these consequences of the consolidation which were in fact advantageous to all, and that they acquiesced in the order with the intent that one consistent decree might be made which should bind all of them. It is certain in point of fact, that all are parties to the decree, whose rights are settled by it. And as we concur with the Chancellor in considering the order of consolidation as a warning to all of the parties to make all questions necessary for settling the respective priorities as if they had been regularly brought into each case,

there is no hardship or injustice, and especially when there was so long an interval before the trial, in holding, all bound as parties by the decree, and by the state of the record at the hearing.

It is contended that in this case the causes, although once consolidated, had in fact been afterwards severed by the removal of one of them from the Louisville Chancery Court into the Jefferson Circuit Court, from which it was afterwards brought back. But we do not find that either of the two suits now particularly in question, was ever in fact so removed. We find that some six or eight months after the consolidation of the cases, the two suits of Cotton upon the mortgages, were removed to the Jefferson Circuit Court by change of venue upon petition. About the same time there was a consent order for the removal of "these two causes," without naming them, but they never were removed; and the other two causes having been removed back into the Louisville Chancery Court, the four were tried together. The order relating to these two causes, if these be the two referred to, shows that they were considered as united. They are regarded as consolidated cases in the former opinion; and it may be fairly inferred from that opinion, that Burke did in fact contest in this Court, the sufficiency of Tharp's bill to create a lien in favor of his claim, whether he made the question as to the validity of the claim itself on account of the alledged illegality of its consideration, is not known. But it was a question made in the record, which he had a right to insist upon in the Chancery Court and in this Court, and which was necessarily decided in both Courts, in giving precedence to Tharp's claim.

As Burke or his representative in his own suit, was bound to take cognizance of this issue in one of the consolidated cases, and was to be bound by the decision of that issue, it is an inconsistency to say that he remained ignorant until after the decree, of the very fact which was expressly put in issue, or that his ignorance could avail him any thing. The allegation implies either a culpable negligence, or it implies more probably the mere personal ignorance on the part of Burke, of what his counsel, acting for him in the suit, must be presumed to have known.

*Parties in consolidated suits are bound to notice the points in issue in the cases respectively, and they are bound by the decisions thereon.*

In either view, his subsequent discovery of the fact would be no ground for a re-trial of the issue under a bill of review. But the record of Tharp's suit not only showed that this fact was in issue, but contained the deposition of one witness detailing circumstances which, taken in connection with the bill of exchange itself, filed in the same record, were calculated to lead, and doubtless did lead to the witness who proved the true nature of the consolidation. That witness was the payee of the bill, who must have been supposed to know the consideration, and who, for all that appears, was just as accessible and just as ready to give information or testimony before as after the first decree. If then the discovery of a new witness to a fact in issue, is under any circumstances a proper ground for a bill of review, we think it cannot be so in the present case, where, by the use of reasonable diligence with the means of information and the opportunity for enquiry and preparation which the party had, the witness might have been known and his deposition obtained before the decree.

We are of opinion, therefore, that the bill of review does not disclose sufficient ground for introducing new evidence into the case, whereby to affect the decree, upon the question as to the consideration of Tharp's claim, and the other questions presented being questions of mere law arising on the face of the record and decree as they came before this Court, and having been expressly or in effect, decided by it, cannot be again brought up by bill of review, upon the same record and decree, but are finally settled between the parties so far as they affect the disposition of the property sought to be subjected in these suits. As Burke, being a party to the decree and bound by it as such, while it remains in force, could only reverse or change it, or get clear of its effect by the direct modes of proceeding appropriate to the purpose, his bill cannot be sustained except as a bill of review, which it professes to be. And being insufficient in that character, it was properly dismissed. This conclusion renders unnecessary any enquiry as to the benefit which Burke might have had from the facts set up in the bill, or as to his

right to set them up, if he had not been a party to the decree, or if the particular fact had not been put in issue.

Wherefore, the decree dismissing the bill of review, and the decree distributing the proceeds of the attached property, are both affirmed.

*Crittenden and Thruston* for appellants; *Pirtle and Guthrie* for appellees.